IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JERIMAH MERRITT, as assignee of
CAMPANA TECHNOLOGY, INC.,

        Plaintiff,

v.

                            CIVIL ACTION FILE

                            NO. 1:09-CV-00056-JEC

HUB INTERNATIONAL SOUTHWEST
AGENCY LIMITED,

        Defendant.

## ORDER & OPINION

This case is presently before the Court on defendant's Motion for Summary Judgment [49], plaintiff's Motion for Partial Summary Judgment [54], and plaintiff's Motion to Strike [67]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [49] should be **GRANTED**, plaintiff's Motion for Partial Summary Judgment [54] should be **DENIED**, and plaintiff's Motion to Strike [67] should be **DENIED**.

## BACKGROUND

Plaintiff was injured in an industrial accident in February, 2004, when his hands became trapped in a stamping press. (Def.'s

Statement of Material Facts ("DSMF") [49] at ¶ 1.)  Prior to the accident, a corporate secretary of Campana Technology, Inc. ("CamTech") allegedly performed some repairs on the press.  (*Id.* at ¶ 3.)  During the relevant time period, CamTech was insured under an occurrence-based Commercial General Liability Policy (the "Policy") through Fireman's Fund Insurance Company ("FFIC").  (*Id.* at ¶ 4-5 and Pl.'s Statement of Material Facts ("PSMF") [54] at ¶ 2.)  The Policy was obtained through defendant Hub International Southwest Agency Limited ("HUB"), a licensed insurance agency. (PSMF [54] at ¶ 4.)

In February, 2006, plaintiff filed a lawsuit in Fulton County State Court against CamTech.  (DSMF [49] at ¶ 1.)  In the suit, plaintiff alleged that CamTech was partially responsible for his injuries as a result of its negligent work on the stamping press. (*Id.* at ¶ 3.)  Although plaintiff's accident occurred within the coverage period, FFIC refused to defend or indemnify CamTech in the Fulton County suit.  (*Id.* at ¶ 8.)  Among other reasons, FFIC denied coverage because it did not receive timely notice of the suit. (*Id.*)  Apparently, CamTech delayed giving notice of the suit to FFIC because it was advised by its broker, defendant HUB, that the Policy did not cover the loss.  (*Id.*)  Defendant HUB never forwarded notice of the suit to FFIC.  (Pl.'s Br. [70] at Ex. 3.)

2

Plaintiff attempted to cure the notice issue by dismissing the 2006 suit without prejudice, and refiling it in 2007 pursuant to Georgia's renewal statute. (DSMF [49] at ¶¶ 96-98.) In the 2007 suit, CamTech filed a third party complaint against defendant HUB and others in conjunction with its Answer. (Pl.'s Br. [70] at Ex. 12.) CamTech subsequently withdrew its Answer to the suit, and a default judgment was entered against it for $14,661,339. (*Id.* at Exs. 6 and 7.) As a result of the default judgment, defendant HUB did not have an opportunity to participate in a trial as to liability or the amount of damages. (*Id.*)

Following the judgment, CamTech assigned all of its claims against FFIC and defendant HUB to plaintiff in return for a release. (DSMF [49] at ¶ 12.) Plaintiff then filed the present lawsuit against defendant HUB in this Court. (Compl. [1].) In his complaint, plaintiff alleges that defendant was a dual agent of CamTech and FFIC. He asserts four theories of liability against defendant: (1) that it was negligent in (a) failing to forward notice of plaintiff's injury and claim to FFIC and (b) advising CamTech that there was no coverage for the accident; (2) that it tortuously interfered with CamTech's contract with FFIC; (3) that defendant breached the insurance contract; and (4) that defendant breached a fiduciary duty that it owed to CamTech. (*Id.* at ¶¶ 35, 37, 39-41, 44.)

AO 72A
(Rev.8/82)

Defendant has filed a motion for summary judgment on all of plaintiff's claims. (Def.'s Mot. for Summ. J. [49].) In support of its motion, defendant argues that it did not proximately cause CamTech's injury because FFIC did not have an obligation to defend CamTech in the 2007 suit. (Def.'s Br. [49].) Plaintiff has filed a related motion to strike.[1] (Pl.'s Mot. to Strike [67].) In the motion to strike, plaintiff seeks to limit the evidentiary materials available for the Court's review in deciding the motion for summary judgment. (*Id.*)

## DISCUSSION

### I.   **Plaintiff's Motion to Strike**

In his motion to strike, plaintiff asks the Court to exclude the declaration of Joanne Padavano and the prior deposition testimony of Bill and Jim Campana under Federal Rule of Civil Procedure 12(f). (*Id.*) Plaintiff's motion is procedurally improper, as Rule 12(f) only applies to pleadings. *See Certain Underwriters at Lloyd's, London v. Belu*, 2009 WL 2848995 at *3 (N.D. Ga. 2009) (Story, J.)(explaining that Rule 12(f) only applies to pleadings) and *Morgan v. Sears, Roebuck & Co.*, 700 F. Supp. 1574,

---

[1]   Plaintiff has also filed a motion for partial summary judgment on his claims. (Pl.'s Mot. for Partial Summ. J. [54].) As discussed below, the Court's ruling on defendant's motion for summary judgment forecloses the possibility of summary judgment in favor of plaintiff. Accordingly, plaintiff's motion for partial summary judgment [54] is **DENIED**.

4

1576 (N.D. Ga. 1988) (Forrester, J.)(noting that the proper method of challenging evidence is by filing a notice of objection).  The motion is therefore **DENIED**.

Nevertheless, the Court may only consider "evidence which can be reduced to an admissible form" in ruling on a motion for summary judgment.  *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).  Plaintiff contends that the Padavano Declaration does not meet this standard because it inconsistent with her prior deposition testimony.  (Pl.'s Br. in Supp. of Mot. to Strike [67] at 2-11.) As to the Campanas' testimony, plaintiff suggests that it is irrelevant because it was generated in a different lawsuit.  (*Id.* at 12-24.)

   **A.   Joanne Padavano's Declaration**

Joanne Padavano was the commercial underwriter for FFIC on the Policy purchased by CamTech.  (Padavano Decl. [67] at Ex. A, ¶¶ 2-4.)  She has submitted a declaration in support of defendant's motion for summary judgment.  (*Id.*)  Perceiving inconsistencies between Padavano's declaration and her prior deposition testimony, plaintiff moves to strike the declaration as a "sham affidavit." (Pl.'s Br. [67] at 3.)

The "sham affidavit" rule is designed to prevent a party from fabricating material issues of fact in response to a motion for summary judgment. *Van T. Junkins & Assocs., Inc., v. U.S. Indus.,*

5

*Inc.*, 736 F.2d 656, 656-57 (11th Cir. 1984).  It permits a district court to disregard an affidavit that "contradicts [the affiant's prior] testimony on deposition." *Id.*  For the rule to apply, the affidavit must be "inherently inconsistent" with the affiant's deposition testimony. *Id.* at 658.  A statement in an affidavit that is merely at odds with earlier deposition testimony is not grounds for exclusion. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986).  Moreover, affidavits offered by third-parties, as opposed to litigants, are less susceptible to disregard. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1531-32 (11th Cir. 1986)(declining to apply the sham affidavit rule to a third party's affidavit).

Applying the above standard, plaintiff has failed to meet his burden to show that the Padavano Declaration is a sham affidavit. *See In re Stand 'n Seal*, 636 F. Supp. 2d 1333, 1335 (N.D. Ga. 2009) (Thrash, J.)(placing the burden for demonstrating that an affidavit is a "sham" on the moving party).  As an initial matter, plaintiff relies on an "inverse sham affidavit" theory that is not supported by any case law. (Pl.'s Br. [67] at 4.)  That is, plaintiff argues that defendant has offered the Padavano Declaration to show that there is no genuine issue of material fact, unlike the typical scenario where a party offers a sham affidavit to fabricate a genuine issue of material fact. (*Id.*)

6

Plaintiff does not cite any cases that apply the sham affidavit rule to negate, rather than create, an issue of material fact. The Court suspects that no such cases exist, because in ruling on a motion for summary judgment, courts are required to view the evidence and make all reasonable inferences in the nonmovant's favor. It is difficult to conceive of a scenario in which an affidavit that is truly inconsistent with prior deposition testimony as to a material fact would provide grounds for granting summary judgment.

Assuming that the sham affidavit rule is available under these circumstances, the Court still finds the rule inapplicable to the Padavano Declaration. None of the alleged inconsistencies between Padavano's declaration and her former testimony amount to an "inherent inconsistency." *See Santhuff v. Seitz*, 385 Fed. App'x. 939, 944-945 (11th Cir. 2010) (declaring a party's affidavit a sham where the explanation for conflicts with prior testimony was "implausible at its core"). In fact, the alleged "contradictions" in the Padavano declaration are better understood as clarifications necessitated by incomplete or unclear verbal responses in Padavano's deposition. As such, the declaration is not properly excluded under the sham affidavit rule. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (explaining that the sham affidavit rule should be applied sparingly).

AO 72A
(Rev.8/82)

In addition, Padavano is a non-party.  As discussed, the law of this circuit disfavors the exclusion of third-party affidavits under the "sham affidavit" rule.  *Lane*, 782 F.2d at 1531 ("we would be unable, absent great trepidation to affirm [a finding that an affidavit is a sham] with respect to a disinterested witness' contradictory affidavit")(emphasis in original).  *See also Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008) ("we have never squarely addressed whether, and in what circumstances, a district court may disregard the affidavit of a non-party that is inherently inconsistent with deposition testimony given by the non-party previously in the same case").  For all of these reasons, the Court declines to exclude the Padavano declaration in ruling on defendant's motion for summary judgment.[2]

**B.   Prior Deposition Testimony of Bill and Jim Campana**

In his motion, plaintiff also asks the Court to strike the deposition testimony of Bill Campana and Jim Campana that was

---

[2]   Plaintiff also argues that Padavano is not entitled to testify on behalf of FFIC because she was deposed in her individual capacity, and not as a Rule 30(b)(6) corporate designee. (Pl.'s Br. [67].)  Plaintiff does not cite any authority that would prohibit former employee Padavano from offering evidence as to how she, as the corporate underwriter, would have made the decision to deny coverage.  *See T.J. Blake Trucking, Inc. v. Alea London, Ltd.*, 284 Ga. App. 384, 385 (2007)(finding the "affidavit of the person in charge of making the decisions whether and to what extent coverage will be provided" satisfactory support for a motion for summary judgment).

generated in the 2006 Suit.  (Pl.'s Br. [67] at 11-22.)  Plaintiff argues that both depositions fail to meet the threshold requirements for admissibility.  As discussed above, striking these depositions under Rule 12(f) is procedurally improper.  *See Certain Underwriters at Lloyd's, London,* 2009 WL 2848995 at *3.

Turning to the question of admissibility, the testimony of Bill and James Campana is offered to provide background information on CamTech and its business, as well to establish that Bill Campana acted independently when he repaired the stamping press.  (Def.'s Resp. Br. [71] at 12.)  It is thus highly relevant to the vicarious liability issue, and likely admissible.  However, even considering the deposition testimony, the facts surrounding Bill Campana's work on the stamping press are disputed.  Moreover, the Campanas' testimony has no bearing on the issue of proximate cause, which as discussed below is an independent ground for granting summary judgment and is ultimately determinative of this case.  Thus, the Court will not consider the Campana depositions in ruling on defendant's motion for summary judgment.

## II.  <u>Defendant's Motion for Summary Judgment</u>

### A.  **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the

non[-]moving party's case." *Id*. at 325.   After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id*. at 324.   While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

**B.   The Doctrine of Avoidable Consequences**

Before addressing the parties' arguments, the Court notes a principle of Georgia law, not raised by either party, that appears relevant to this case.   Under Georgia law, "one cannot willingly submit to being injured and then seek recompense for that injury from a third party even if that third party was negligent." *Robinson v. J. Smith Lanier & Co. of Carrollton*, 220 Ga. App. 737, 738 (1996).[3]  CamTech's injury, for which plaintiff seeks to recover

---

[3]   The parties agree that the Policy is governed by Georgia law.   *See Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985) (a federal court sitting in diversity must apply the substantive law of the state in which it is located).

in this case as CamTech's assignee, is the uninsured loss arising from a default judgment in the 2007 suit. (Compl. [1] at ¶ 29.) CamTech willingly submitted to that injury by withdrawing its defense of the 2007 suit and permitting an unchallenged hearing on damages, despite having at least an arguable defense that it was not liable under common law principles of vicarious liability.

Whether CamTech had a valid defense to the 2007 suit is likely a jury question given the factual dispute in the record concerning the issue of vicarious liability. Regardless, under the cited Georgia case, it would appear that CamTech could not willingly abandon the vicarious liability defense and submit to a default judgment at the expense of defendant, a third-party. *Id.* There may have been commendable reasons for CamTech to admit fault, but the law does not permit CamTech's "attempt to require defendant to bear the expense of [its] charity." *Id.* at 739. Defendant's motion for summary judgment on plaintiff's tort claims would therefore seem to find some support in this case authority. However, as neither party discussed this issue, the Court will focus on the ground for summary judgment asserted by defendant that the Court has found persuasive: lack of proximate cause.

## C. Proximate Cause

In order to succeed on any of his four primary theories of recovery, plaintiff must demonstrate that defendant's conduct was

12

the "proximate cause" of his injuries. *Robinson*, 220 Ga. App. at 738 ("before an action for a tort will lie, the plaintiff must show he sustained injury or damage *as a result of* the negligent act or omission to act in some duty owed to him").  "[W]hen an injury can be traced directly to a wrongful act, and but for such wrongful act it could not reasonably be supposed that the injury would have resulted, this essentially antecedent act may be said to be the 'proximate cause' of the injury." *Parris v. Pledger Ins. Agency, Inc.*, 180 Ga. App. 437, 439 (1986).  With respect to an allegedly negligent insurance agent, there is no proximate cause unless "recovery against the insurance carrier would have been possible" in the absence of the agent's negligence. *See Peagler & Manley Ins. Agency, Inc. v. Studebaker*, 156 Ga. App. 786, 786 (1980).

The crux of plaintiff's claims is that defendant failed to give FFIC notice of his injury or the suit, and further failed to advise CamTech to notify FFIC of either occurrence.  (Compl. [1] at ¶¶ 35, 44.)  This failure is alleged to have proximately caused FFIC's denial of coverage, and thus the default judgment against CamTech. (*Id.*)  However, if no recovery against FFIC would have been possible in any case, defendant's actions cannot be considered the proximate cause of CamTech's loss, notwithstanding any negligence.  On this point, the Court agrees with defendant that even if FFIC had been properly notified of plaintiff's accident, it would not have

13

provided coverage for his injuries because the undisputed evidence shows that the Policy was subject to rescission at the time of plaintiff's injury. (*See* Def.'s Br. [49] at 6-14.)

Rescission voids an insurance policy *ab initio*. *See Nappier v. Allstate Ins. Co.*, 961 F.2d 168, 169 (11th Cir. 1992)(affirming summary judgment where an insured made material misrepresentations in an insurance application). Under Georgia law, rescission is available when misrepresentations, omissions, or incorrect statements in an insurance application are:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

O.C.G.A. § 33-24-7(b).

Whether an applicant acted in good faith in completing an insurance application is immaterial in determining whether a policy is subject to rescission under the above statute. *Taylor v. Ga. Int'l Life Ins. Co.*, 207 Ga. App. 341, 342 (1993). Rather, to obtain relief under § 33-24-7(b), the insurer "need only show that the representation [at issue] was false and that it was material in

14

that it changed the nature, extent, or character of the risk"
assumed by the insurer in issuing the policy.  *Id.  See also Pope
v. Mercury Indem. Co.*, 297 Ga. App. 535, 537 (2009) ("To avoid
coverage under [O.C.G.A. § 33-24-7], 'the insurer need only show
that the representation was false and that it was material.'").  A
representation is material when it would "influence a prudent
insurer in determining whether or not to accept the risk, or in
fixing the amount of the premium in the event of such acceptance."
*Bourne v. Balboa Ins. Co.*, 144 Ga. App. 55, 56 (1977).

There are two documents in the record from which it is apparent
that CamTech materially misrepresented the nature of its business
when it applied for the Policy at issue in this case.  First, in the
Application for the Policy, CamTech identified the  hazards and
classifications of its business as (1) "furniture mfg. or assembly
wood," and (2) "machine shops - NOC."  (DSMF [49] at ¶ 61.)  The
first classification referred to CamTech's Georgia location, where
plaintiff was injured.  (Padavano Decl. [59] at ¶ 10.)  The latter
classification referred to its Pennsylvania location.[4]  (*Id.*)
CamTech affirmatively stated in the Application that it did not

---

[4] Once Ms. Padavano discovered that the Pennsylvania operation
had no manufacturing employees, she changed the code for
Pennsylvania to "furniture mfg. or assembly wood." (Padavano Decl.
[59] at ¶ 10.)

15

install, service, or demonstrate products.  (DSMF [49] at ¶ 63.)
In a separate Executive Summary, CamTech described its business as
"cabinet manufacturing."  (*Id.* at ¶ 62.)

Plaintiff does not dispute that the statements and descriptions
in the Application and Executive Summary are inconsistent with
CamTech's activities that allegedly caused plaintiff's injury: that
is, repairs to the stamping press that was involved in plaintiff's
accident.  As such, the representations are properly considered
"incorrect statements." *See* O.C.G.A. § 33-24-7(b).  Moreover, the
statements are material in that they "changed the nature, extent,
or character of the risk" assumed by FFIC in issuing the Policy.
*Taylor*, 207 Ga. App. at 342.  According to the underwriter's
unrebutted testimony, FFIC would not have issued the Policy if it
had known that CamTech was engaged in repairing industrial
machinery, because that would have drastically increased the risk
assumed by FFIC.  (Padavano Decl. [50] at ¶¶ 19-25.)  The
underwriter's testimony is sufficient to support summary judgment
in favor of FFIC, and thus defendant, on the ground of rescission.
*Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 432-33
(1995).

In response to defendant's rescission argument, plaintiff cites
evidence that CamTech's corporate representative did not prepare or
sign the inaccurate documents.  (J. Campana Decl. [70] at ¶ 6.)

16

Assuming that is true, CamTech nevertheless is bound by the documents and charged with knowledge of their contents. *Prudential Ins. Co. of Am. v. Perry*, 121 Ga. App. 618, 622 (1970). Absent fraud on the part of the agent, an insurance applicant "is bound by the answers recorded on [an] application [for insurance], whether written by him or by [his] agent." *Id.* Plaintiff does not present any evidence that the Application was fraudulently completed, or that his agent prevented him from reading or verifying the statements in the Application.

Plaintiff also argues that because the alleged misstatements in the Application and Executive Summary were not physically attached to the Policy, and because the Policy contains a merger clause, the documents cannot form the basis for rescission. (Pl.'s Resp. Br. [70] at 17-19.) However, in Georgia there is no general requirement that the application be made part of an insurance policy except where the policy is one for life insurance. *Case v. RGA Ins. Servs.*, 239 Ga. App. 1, 9 (1999). *See also* 28-176 APPLEMAN ON INSURANCE & PRACTICE § 176.01[A] (2011)(explaining that Georgia has no statute requiring that the application be attached to the policy). More importantly, O.C.G.A. § 33-24-7 does not by its terms require that an application be physically attached to an insurance policy to serve as a basis for rescission. Rather, the language of the statute suggests that it applies to misrepresentations in any

17

application for insurance, regardless of whether the application is attached to the policy.  O.C.G.A. § 33-24-7(a) and (b).  Indeed, the statute expressly applies even more generally to representations made during the policy negotiation process.  *Id.*

In accordance with the broad language of the statute, two recent Georgia Court of Appeals decisions have rescinded insurance agreements under § 33-24-7, even though the misrepresentations were not attached to the policy itself.  *See Marchant v. Travelers Indem. Co.*, 286 Ga. App. 370, 373-75 (2007)(permitting rescission where questionnaires submitted to obtain a renewal of insurance included misrepresentations as to the scope of the insured's business activities) and *Pope*, 297 Ga. App. at 537-39 (permitting rescission where misrepresentations occurred as "part of a negotiation for insurance").  The Eleventh Circuit similarly has treated § 33-24-7 as an independent basis for rescission, notwithstanding policy language purporting to limit an insurer's ability to seek rescission.  *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1341 (11th Cir. 2009).

Based on the above authority, the Court concludes that § 33-24-7 permits rescission based on material misrepresentations in an insurance application, even though the application is not attached to the policy and the policy contains a merger clause.  As a result of CamTech's material misrepresentations, which were directly

18

relevant to the injury that plaintiff sustained, FFIC would not have been obligated to provide coverage for plaintiff's injury even if it had received timely notice of the occurrence and of plaintiff's suit.  Accordingly, the Court **GRANTS** defendant's motion for summary judgment.[5]

### D.  Additional Grounds for Summary Judgment

In Count II of his complaint, plaintiff asserts a claim for tortious interference with contract.  (Compl. [1] at ¶¶ 36-38.)  To prevail on this claim, plaintiff must show that defendant is a "third party" or "stranger" to the contract with which it allegedly interfered.  *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 608 (1998).  An agent for one of the parties to a contract of insurance is not a "stranger" to the contract, and is therefore not subject to a claim for tortious interference.  *Id.*  Under Georgia law, an independent insurance agent or broker is generally considered to be the insured's agent.  *European Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 173-74 (1985).

---

[5]  Defendant seeks summary judgment on the additional grounds that (1) renewal of the 2006 suit cured the late notice issue and (2) there was no coverage for plaintiff's injury under various terms of the Policy.  (Def.'s Br. [49].)  The first issue is not supported by the case law cited by defendant.  The Court need not reach the second issue, given the Court's grant of summary judgment on a different ground.

The parties here agree that defendant was CamTech's agent. Further, all of defendant's alleged misconduct occurred while acting, or failing to act, in its capacity as CamTech's agent. As such, defendant is not a "stranger" to the Policy. For this additional reason, defendant's motion for summary judgment as to plaintiff's tortious interference claim is **GRANTED**.

Count III of the complaint is similarly subject to summary judgment on alternative grounds. In this Count, plaintiff claims that defendant breached the insurance contract. (Compl. [1] at ¶ 40.) However, defendant is not a named party to the contract. Neither is defendant a third-party beneficiary of the contract under Georgia law. *Keith v. Alexander Underwriters Gen. Agency, Inc.*, 226 Ga. App. 838, 840 (1997)(an "insurance agent is not a third-party beneficiary of the contract of insurance between the insurer and the policyholder"). Thus, to the extent plaintiff is claiming a breach of contract based on the Policy, defendant's motion for summary judgment [49] is **GRANTED** for the additional reason that defendant is not a party to the contract.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [49] is **GRANTED**, plaintiff's Motion for Partial Summary

Judgment [54] is **DENIED**, and plaintiff's Motion to Strike [67] is

**DENIED**.


SO ORDERED, this <u>12th</u> day of September, 2011.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

21